UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TAMMY SICKINGER,

    Plaintiff,

    v.                                                                    Case No. 19-CV-1489

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

Tammy Sickinger seeks judicial review of the final decision of the Appeals Council of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). On January 7, 2019, an Administrative Law Judge (ALJ) denied Sickinger's claim at step five, concluding that Sickinger retains sufficient residual functional capacity such that she "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." R. 22. Sickinger subsequently sought judicial review. For the reasons set forth below, the Commissioner's decision will be remanded for further proceedings consistent with this decision.

## BACKGROUND

On November 3, 2015, Sickinger applied for disability insurance benefits. The claim was denied initially and upon reconsideration. Thereafter, Sickinger filed a written request for a hearing before an ALJ. R. 10. After receiving testimony both from Sickinger and a

vocational expert (VE) and reviewing the medical record, the ALJ concluded that Sickinger suffered from the severe impairments of chronic obstructive pulmonary disease, degenerative disc disease of the lumbar spine, degenerative joint disease of the right shoulder, degenerative joint disease of the left hip, and that she had a learning disorder and major depression with features of generalized anxiety disorder. R. 13. The ALJ concluded that none of Sickinger's severe impairments medically met or equaled a listing. R. 14.

Despite her severe impairments, the ALJ determined that Sickinger retained the residual functional capacity (RFC) to perform light work with limitations. R. 16-17. Based on Sickinger's RFC, the VE opined that she could perform the occupations of cashier, office helper, and assembler. R. 63. The VE then opined that these occupations exist in significant numbers in the national economy. R. 63-66. The ALJ adopted the VE's opinions as the basis for her conclusion that significant numbers of jobs exist in the national economy suitable for someone with Sickinger's limitations, a conclusion that resulted in the denial of Sickinger's claim. R. 22. In this appeal, Sickinger challenges the reliability of the method the VE employed in calculating that a significant number of positions exist for the occupations that are suitable for someone with Sickinger's RFC.

As is common, the VE relied upon the Dictionary of Occupational Titles (DOT) in determining which occupations are suitable for someone with Sickinger's limitations. However, the DOT does not publish data revealing the number of positions that exist in the national economy for each occupation. To retrieve that information, the VE relied upon the Department of Labor's Selective Occupational Categories (SOC). R. 66. However, the SOC provides data only in terms of categories into which the occupational titles, which are derived from the DOT, are categorized. Accordingly, the VE must deduce the number of positions

2

available for a particular occupational title from the number of positions the SOC states are available for a certain occupational category. Sickinger's counsel objected to the VE's testimony, citing *Chavez v. Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018). The ALJ indicated that she would address the argument in the written decision, and Sickinger now renews her challenge to the VE's methodology.

## ANALYSIS

### I. Applicable Legal Standards

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported [her] decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to [her] conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does

3

Case 1:19-cv-01489-SCD   Filed 08/07/20   Page 3 of 9   Document 25

not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); and *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

II. **Substantial evidence does not support the ALJ's determination that significant numbers of jobs exist in the economy for someone with Sickinger's limitations.**

Sickinger presents a single argument: as noted above, she argues that the ALJ failed to ensure the accuracy and reliability of the vocational expert's methodology in determining that occupations suitable for someone with Sickinger's limitations exist in significant numbers in the national economy. She is correct.

At step-five, an ALJ carries the burden in demonstrating with substantial evidence that jobs exist in significant number suitable for someone with the claimant's residual functional capacity. *Chavez v. Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018) (affirming that at step-five "the agency [bears] the burden"). "In the context of job-number estimates, . . . the substantial evidence standard requires the ALJ to ensure the approximation is the product of a reliable method." *Chavez*, 895 F.3d at 968 (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). Here, the ALJ failed to appropriately ensure that the VE's approximation was the product of a reliable method.

A. **Despite proper objection, ALJ failed to make an inquiry into the reliability of the VE's method.**

"[A]n ALJ is entitled to accept the vocational expert's conclusion," unless the claimant questions "the basis of the . . . conclusions." *Donahue*, 279 F.3d at 446 (permitting "an

4

Case 1:19-cv-01489-SCD   Filed 08/07/20   Page 4 of 9   Document 25

expert . . . to give a bottom line, provided that the underlying data and reasoning are available on demand"). However, "[i]f the claimant challenges the reliability of a vocational expert's opinions, the ALJ is required to make an inquiry similar to that of Federal Rule of Evidence 702 to find out whether the expert's conclusions are reliable." *Courtney v. Berryhill*, 385 F. Supp. 3d 761, 763 (W.D. Wis. 2018) (citing *Donahue*, 279 F.3d at 446).

Here, Sickinger's attorney "put in an objection with respect to the [job] estimates." R. 68-69. Despite the explicit objection, the Commissioner claims that the objection was insufficient to place the ALJ on notice of her duty to inquire into the reliability of the VE's opinions because "Plaintiff failed to identify specific issues that the ALJ should have explored." ECF No. 23 at 6. To the contrary, Sickinger did more than is necessary to impose upon the ALJ a duty to "hold the VE to account for the reliability of his job-number estimates." *Chavez*, 895 F.3d at 970. In fact, counsel cited *Chavez* in his objection. R. 68.

To require the ALJ to inquire into the reliability of the VE's conclusions, "the claimant does not need to make a formal objection;" rather, "[the claimant] need[] only to cross-examine the expert and elicit statements that call into question the reliability of [the expert's] conclusions." *Courtney*, 385 F. Supp. 3d at 763–64. Here, however, Sickinger went beyond, making a formal objection and expressly tying the objection to the *Chavez* court's criticism of the equal distribution method with respect to the job-number estimates the VE here propounded. R. 68. Further, the objection occurred after Sickinger's attorney cross-examined the VE specifically to call into question the basis, or lack thereof, for the VE's opinions of job-number estimates. Accordingly, I find that counsel's objection was more than adequate to alert the ALJ that he was raising the issue he now raises on appeal.

5

Because Sickinger objected at the hearing, "the ALJ should make an inquiry (similar though not necessarily identical to that of [Fed. Rule of Evidence] 702) to find out whether the purported expert's conclusions are reliable." *Id*. Here, however, the ALJ made no inquiry. After the objection, the ALJ examined the VE whether "any of the limitations presented in the hypotheticals [are] not covered by the DOT." R. 69. In response, the VE confirmed that "[a]bsences are not covered, time off task would not be covered, specific, public, co-worker contacts, supervisory contacts are not covered," and that a sit-stand option is not covered. *Id*. The VE then confirmed that his opinions on areas which the DOT does not cover were based on his own experience. *Id*. Absent from the subsequent examination was any question or response specific to the methodology the VE used in deducing from the numbers of jobs available for a category the number of jobs available for a subset of that category.

In response, the Commissioner argues that the ALJ need not explore the reliability of the VE's opinions because the VE had already adequately explained the reliability of his opinions. ECF No. 23 at 5. In support, the Commissioner points to the VE's testimony in which he confirmed that he relied upon his experience and used "other factors such as the typical jobs [he] observed in the economy as well as those jobs where there might be some part time employment" to derive his job-number estimates. R. 67. Indeed, the *Chavez* court instructs that "the VE could support the approximation by, for example, drawing on knowledge of labor market conditions and occupational trends, gleaned from reviewing relevant data sources or form placing workers in jobs."[1] *Chavez*, 895 F.3d at 969.

---

[1] The Administration relies upon the *Chavez* court's comment that "[t]he VE, for example, could have drawn on his past experience with the equal distribution method, knowledge of national or local job markets, or practical learning from assisting people with locating jobs throughout the region, to offer an informed view of the reasonableness of his estimates." *Chavez*, 895 F.3d at 969. However, that comment appears specifically directed at the facts in *Chavez* where, despite two methodologies producing widely divergent estimates, the VE chose to use the equal distribution method without any reasoned basis.

6

However, the Commissioner misunderstands the degree of examination *Chavez* requires and misconstrues the factual record. *Chavez* demands an in-depth examination to ensure that conclusions have a "reasoned and principled basis." *Chavez*, 895 F.3d at 969. The inquiry should be "similar though not necessarily identical to that of Rule 702." *Id.* Rule 702 largely codified the *Daubert* standard and permits expert testimony only if "the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see Donahue*, 279 F.3d at 446 (recognizing that Rule 702 largely codified the *Daubert* standard). Indeed, "[t]he ALJ needed to do more than just ask questions; [the ALJ] needed to hold the VE to account for the reliability of his job-numbers estimates." *Id.* at 970.

Here, the ALJ needed to explore the reliability of the "crosswalk" approach, which appears to employ the equal distribution method. R. 68. Under the equal distribution method, the VE divided the number of positions available for an occupational category by the number of occupational titles that fall into that category to arrive at a figure that should represent the number of positions available for a particular occupational title. R. 66-68. The equal distribution method relies upon the premise that each occupational title within a particular occupational category represents an equal number of positions available in the national economy. Of course, that premise is what the *Chavez* court criticized. *Chavez*, 895 F.3d at 969 ("What most concerns us is that the method rests on an assumption about the relative distribution of jobs within a broader grouping that lacks any empirical footing.") For example, one title could have 5,000 jobs in the economy, while another could have 250,000, and yet they are essentially counted the same under the equal distribution method. The VE did not

7

explain how the use of this method would produce reliable estimates. Nor did the ALJ inquire what past experiences of the VE convinced him of the reliability of his opinions here. Using Rule 702 as a guidepost, there is an absence of testimony detailing the reliability of the premises upon which the VE relied, as well as an absence of testimony detailing the reliability of those premises to this case. Accordingly, because the VE's testimony affords a court no opportunity to review the reliability of the method the VE employed, the testimony he offered as support is not sufficient to provide a "reasoned and principled basis." Therefore, I find that the ALJ erred by failing to examine the reliability of the methodology the VE employed to produce job-number estimates.

### B. The error was not harmless.

The Commissioner contends that, even if the ALJ erred, remand is not warranted because the error was harmless. An error is harmless only when a court can "predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). In a harmless error analysis, a court must *prospectively* "look at the evidence in the record to see if [the court] can predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

Here, the error occurred at step five, where the ALJ bears the burden of demonstrating with substantial evidence that the claimant is not capable of performing any work. The ALJ failed to meet the burden because the ALJ may rely upon a VE's opinion only if that opinion is the result of reliable methods. The absence of evidence detailing the unreliability or reliability of the VE's opinions precludes the predictability of the result on remand, and thus I am not convinced the result on remand would be the same. This is true even if the VE

8

identified a large number of available jobs in the economy. As the Seventh Circuit held in *Chavez,* errors like these are seldom harmless*:*

> We recognize that the VE identified three suitable jobs for Chavez and then estimated that, in total, nearly 500,000 of those jobs existed in today's economy. The observation leads nowhere, however, as each of the VE's job estimates was the product of the equal distribution method, and nothing in the administrative record allows us to conclude with any reliability that the estimates reasonably approximate the number of suitable jobs that exist for Chavez. The substantial evidence standard does not permit the shortcut, and too much is at stake for Chavez for us to take it. Her case must go back.

895 F.3d at 970.

## CONCLUSION

The case is **remanded** to the Commissioner for further consideration of the vocational expert's methodology.

**SO ORDERED** this 7th of August, 2020.

_____
STEPHEN C. DRIES
United States Magistrate Judge